# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Ar-Raafi Nichols (B-79295),

    Plaintiff,

v.

Charles Best,

    Defendant.

No. 15 C 2946

Judge John J. Tharp, Jr.

## MEMORANDUM OPINION AND ORDER

Plaintiff Ar-Raafi Nichols brought this *pro se* lawsuit under 42 U.S.C. § 1983, claiming that he was placed in segregation at the Stateville Correctional Center without due process. Before the Court is Defendant Charles Best's motion for summary judgment. (Doc. 35.) For the following reasons, Defendant's motion is granted.

**I.    Legal Standard**

    **A.    Federal Rule of Civil Procedure 56**

Pursuant to Federal Rule of Civil Procedure 56(a), this Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To establish that a material fact is undisputed, a party "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Rule 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Rule 56(c)(3). Courts must "construe all facts and draw all reasonable inferences in favor of the nonmoving party." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the allegations of his complaint and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010); *Carroll*, 698 F.3d at 564 ("[m]ere metaphysical doubt" about material facts is not enough).

B.  **Northern District of Illinois Local Rule 56.1**

Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. (Dkt. 37.) The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue", *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009), which Defendant here did. (Doc. 38.) "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Here Plaintiff submitted a response memorandum, verified under 28 U.S.C. § 1746 (Doc. 44), but he

2

did not file a response to Defendant's statement of facts or provide his own statement of additional facts.[1]

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Wilson v. Kautex, Inc.*, 371 Fed. App'x. 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a *pro se* litigant.") (citation omitted); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"). Accordingly, the Court accepts all assertions in Defendant's statement of facts as true to the extent that they are supported by the record. *See* L.R. 56.1(b)(3)(C); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Notwithstanding any admissions, however, the Court has interpreted Plaintiff's filings generously consistent with his *pro se* status and will construe those filings, as well as the record evidence (which includes his deposition in this case), in the light most favorable to him, to the extent that he has either pointed to evidence in the record or could properly testify himself about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602. With these standards in mind, the Court turns to the relevant facts.

---

[1] Concurrent with his response to Defendant's summary judgment motion, Plaintiff submitted a request for recruitment of counsel (Doc. 43), stating that he is incapable of litigating his claim on his own because it involves complex issues. But the issues raised in Defendant's motion for summary judgment are not beyond Plaintiff's capabilities. Notably, as set forth below, Defendant relies entirely upon Plaintiff's own deposition in support of summary judgment. And, Plaintiff's response memorandum is coherent and articulate, as has been all his pleadings throughout this case. Plaintiff's request is denied.

## II. Factual Background

Plaintiff is an inmate at Stateville Correctional Center, where he is serving a 50-year prison sentence. (Doc. 38, D's SOF (hereafter "SOF") at ¶¶ 1, 6.) Defendant, at all relevant times, was the Adjustment Committee Chairperson. (SOF ¶ 2.)

At issue in this lawsuit is the approximately 60-day segregated confinement of Plaintiff in December 2013 through February 2014. (*Id.,* ¶¶ 10-14.) On December 9, 2013, Plaintiff received a disciplinary charge for gambling, contraband/unauthorized property, and trading or trafficking. (*Id.,* ¶ 10.) That day, he was put on investigation status and sent to segregation. (*Id.,* ¶ 11.) On January 9, 2014, he received a disciplinary ticket for the same charges. (*Id.,* ¶ 10; Doc. 44, P's Mem (hereafter "P's Mem") at Ex. C.) On January 20, 2014, Plaintiff attended a hearing, was found guilty of the charges, and was sentenced to 30 days of segregation and one month of lost commissary. (SOF ¶ 13.) Although he then informed Defendant that at that time he had already been in segregation for over 30 days, Plaintiff was not released from segregation until February 9, 2014. (*Id.,* ¶ 14; Doc. 6 at 4.)

During Plaintiff's segregated confinement, he had a roommate, could go outside to exercise once a week, and could go to the healthcare unit on a medical pass. (SOF, ¶¶ 8-9.) Plaintiff was not allowed, however, to eat meals in the dining hall, attend religious services, or educational programs, or go to the law library. (P's Mem. at 4.) He was also not allowed audio-visual privileges, daily telephone calls, photographs or other personal property, or commissary. (*Id.*) And Plaintiff had to remain handcuffed and behind glass during visits with his family. (*Id.*)

Plaintiff was housed in six different cells during his segregated confinement. (SOF ¶ 16.) For 24 non-consecutive days during that confinement, Plaintiff was housed in a cell where he

complained about cold temperatures caused by a window that was broken in some fashion. (*Id.* ¶¶ 15-25.) Specifically, on December 9, 2013, Plaintiff was placed in cell F-232 (the first cell placement). (*Id.,* ¶ 18.) Cell F-232 had functioning heat, but it was not on "full blast." (*Id.*) The window in F-232 had some cracks, a broken latch that was held together by string, and missing glass. (*Id.*) Plaintiff complained to the house sergeant and the gallery officer that the cell was too cold, and on December 17, 2013, he was moved to cell F-123 (the second cell placement). (*Id.,* ¶¶ 18-19.) Plaintiff complained to the house sergeant and lieutenant that cell F-123 had the same issues as Cell F-232. (*Id.*) He was moved that day to Cell F-217 (the third cell placement). (*Id.,* ¶ 20.) Cell F-217 was warmer because its window was covered in plastic, and Plaintiff did not complain about the conditions in cell F-217. (*Id.* ¶¶ 20-21.) On January 24, 2014, Plaintiff was moved to cell F-219 (the fourth cell placement). Cell F-219 had heat that was "fair," had plastic over part of the window, and the other part of the window was intact. (*Id.,* ¶ 22.) Plaintiff complained to the house sergeant and lieutenant about the temperature in cell F-219, and three days later, on January 27, 2014, he was moved to cell F-238 (the fifth cell placement). (*Id.* ¶¶ 23-24.) The heat in cell F-238 worked, and the window was not broken. (*Id.,* ¶ 24.) On January 29, 2014, Plaintiff was moved to cell F-205 (the sixth cell placement). (*Id.,* ¶ 25.) The heat worked in cell F-205, but the window had broken latches and was held closed with strings. (*Id.,* ¶ 25.) Plaintiff complained to the house sergeant and lieutenant about the temperature in cell F-205. (*Id.,* Ex. B at pp. 44-45.) Plaintiff testified that the reason he was "constantly being moved" was because of the "cell condition." (*Id.,* at pp. 51.) He explained that he was being moved to try and find a cell "that wasn't cold, that the windows weren't messed up or the heat was messed up." (*Id.*)

Gallery 2 of F-House at Stateville houses both segregation and general-population inmates. (SOF ¶¶ 28-29.) Depending on the number of inmates in segregation, the same cell might be used to house either a general population or segregation inmate. (*Id.*) However, in terms of clothing and bedding, an inmate in segregation is given one sleeveless jumpsuit and sheets, whereas a general-population inmate is provided with blankets, a skullcap, ear warmers, and sweat suits. (P's Mem. at 7.) Plaintiff did not have blankets during his time in segregation. (SOF, Ex. B at pp. 31-32, 35, 46.)

### III. Analysis

Upon screening under 28 U.S.C. § 1915A, and based on only the allegations of the complaint, the Court allowed Plaintiff to proceed on a single claim for the denial of procedural due process against Defendant. (Doc. 5.)

The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property. *Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011) (per curiam). Thus, courts undertake a two-part analysis in procedural due-process cases: first, a court must determine whether the plaintiff was deprived of a protected life, liberty, or property interest; second, but only if a protected interest were deprived, a court must determine whether the proper process was afforded. *See Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)). Regarding the first prong, as relevant here, prisoners do not have a liberty interest in remaining in the general population of a prison. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995). Instead, placement in segregation implicates a liberty interest only when the conditions of segregation impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 485. As explained below, Plaintiff's claim is doomed at this prong because his segregated confinement

did not deprive him of a liberty interest.

Plaintiff contends that his segregated confinement implicated a liberty interest for two reasons: (1) because its 60-day duration exceeded the length of the 30-day disciplinary sentence that he received; and (2) because throughout all 60 days he endured significant and atypical hardship compared to life in general population.

Plaintiff's principal complaint in this lawsuit is that he remained in segregation an extra approximately 30 days above his 30-day disciplinary sentence. (P's Mem. at 2.) Plaintiff says that when he was found guilty and sentenced to 30 days of segregation on January 20, 2014, he told Defendant that at that point he had already been in segregated confinement for over 30 days. (*Id.*) Thus, argues Plaintiff, Defendant knew he should have been released to general population, but instead Plaintiff remained in segregation until February 9th. (*Id.*)

The fact alone that Plaintiff stayed in segregation longer than ordered by the disciplinary committee does not trigger a liberty interest or entitle Plaintiff to relief. The Seventh Circuit has addressed this issue squarely. *See Thomas v. Ramos*, 130 F.3d 754, 759 (7th Cir. 1997). Because a prisoner has no liberty interest in remaining in general population, it follows, the court explained, that a late release from segregation likewise does not automatically implicate a liberty interest. *Id.* (finding no liberty interest implicated where prisoner was held in segregation for 70 days, and 19 of them exceeded the allowable punishment). The analysis remains unchanged despite the late release: did the segregated confinement impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

Plaintiff also contends that his extended segregated confinement violated the Equal Protection Clause. (P's Mem. at 5.) Plaintiff says that another inmate, Tyrenzi Wright, was found guilty and also disciplined with a 30-day segregation term on January 20, 2014 (the same day as

7

Plaintiff) for the same infractions and additional ones. (*Id.*) According to Plaintiff, inmate Wright was released back to general population two days later, whereas he remained in segregation until February 9th. (*Id.*)

Plaintiff is also not entitled to relief under this theory. The Court screened Plaintiff's complaint and allowed Plaintiff to proceed on a single claim: the denial of procedural due process. (Doc. 5.) Plaintiff's allegations regarding inmate Wright do not appear in the complaint. The allegations that do appear – even afforded a liberal construction – do not raise an inference of an equal protection claim or put Defendant on notice of such a claim. (*See* Doc. 6.) A district court is not required to consider a new claim first raised in opposition to a motion for summary judgment. *See Anderson v. Donahoe,* 699 F.3d 989, 997 (7th Cir. 2012); *Warren v. Solo Cup Co.,* 516 F.3d 627, 629 n. 3 (7th Cir. 2008); *Griffin v. Potter,* 356 F.3d 824, 830 (7th Cir. 2004). In any event, Plaintiff's allegations of unfair treatment to him individually do not implicate the equal protection clause, as such claims are typically formulated. *See Herro v. City of Milwaukee,* 44 F.3d 550, 552 (7th Cir. 1995) (stating that "person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual") (internal quotation omitted).

Thus, the sole question now before the Court with respect to Plaintiff's 60-day[2] segregated confinement is whether it imposed an "atypical and significant hardship . . . in

---

[2] There are some Seventh Circuit cases that suggest that placement in investigative or discretionary, *i.e.,* non-punitive, segregation can never implicate a liberty interest, *see Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008), but later cases appear to have moved away from that position, suggesting instead that any type of segregated confinement can potentially trigger a liberty interest if it meets the *Sandin* test, *see Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011); *Earl v. Racine County Jail*, 718 F.3d 689, 691 (7th Cir. 2013). Thus, the Court will

8

relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 485. An inmate's liberty interest in avoiding segregation is limited. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (noting that, in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). In assessing whether a term of confinement to segregation gives rise to a liberty interest, the court considers "'the combined import of the duration of the segregative confinement *and* the conditions endured.'" *Id.* (emphasis in the original) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)).

However, with respect to short durations of segregated confinement similar to the 60-day duration at issue here, the Seventh Circuit has acknowledged that it has "affirmed dismissal[s] without requiring a factual inquiry into the conditions of confinement." *Marion*, 559 F.3d at 698, citing *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (59 days); *see also Hoskins v. Lenear*, 395 F.3d 372, 374–75 (7th Cir. 2005) (2 months); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days). It is true that the Seventh Circuit has recently taken issue with courts considering any segregation confinement less than six months to be too short to implicate a liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) ("Six months is not an apt presumptive minimum for establishing a violation.). The Seventh Circuit has urged courts to be wary of the potential psychological consequences of quasi-solitary confinement, even for a short duration. *Id.* But the court ultimately affirmed dismissal of the case at the pleading stage because the prisoner did "not allege that he suffered any significant psychological or other injury" from his 30-day segregation confinement. *Id.* at 837. It remains the law that "[p]risoners generally do not have a liberty interest in avoiding brief periods of segregation, whether

---

consider the entirety of Plaintiff's segregated confinement without drawing any distinction between the periods pre and post his finding of guilt.

administrative or disciplinary." *See Smith v. Akpore*, No. 16-3608, ---Fed.Appx.---, 2017 WL 2367378, at *2 (7th Cir. May 31, 2017) (citing *Kervin*) (concluding that the plaintiff's "30 days in investigative segregation and approximately 3 months in disciplinary segregation were not long enough to raise a concern under the Due Process Clause").

The short duration of Plaintiff's confinement, on the facts of this case, appear to foreclose any due process liberty interest, like in the numerous cases cited above. *See Marion*, 559 F.3d at 698; *Hoskins,* 395 F.3d at 374–75; *Lekas,* 405 F.3d at 612. Sixty days (the length of Plaintiff's confinement) falls well below a six-month presumptive floor rebuked by the Seventh Circuit. And here, like the prisoner in *Kervin,* Plaintiff does not introduce evidence of, nor even suggest, that his short placement in segregation caused him any adverse psychological effect. Notably, Plaintiff was *not* isolated; he had a cellmate the entire time. Plaintiff instead complains only about the loss of privileges and the conditions of his cells.

Nonetheless, the Court has also examined the living conditions during Plaintiff's segregation and still finds no protected liberty interest. In determining whether the hardships imposed are "atypical and significant," the correct comparison is between the "'ordinary conditions of a high-security prison in the state, and the conditions under which the prisoner is actually held.'" *Kervin*, 787 F.3d at 836 (quoting *Marion v. Radtke*, 641 F.3d 874, 876 (7th Cir. 2011)). The Court must consider all of the circumstances of the prisoner's confinement. *Id.* (citing *Columbia Corr. Inst.*, 559 F.3d at 699).

Plaintiff first points to his loss of institutional privileges, such as audio-visual and telephone use, commissary, and access to the library and religious and educational programming. (P's Mem. at 7-8.) But the loss of institutional privileges of the types listed by Plaintiff does not amount to a deprivation of liberty. *Cardenas v. Mashacher*, No. 11-CV-0413-MJR, 2012 WL

10

1297925, at *3 (S.D. Ill. Apr. 16, 2012); *see, e.g., Lekas,* 405 F.3d at 610-11 (24-hour-a-day segregation for 70 days in a locked cell, with no access to prison programs or activities, and drastic reduction of exercise privileges were not "actionably different" conditions from those in the general population); *see also Thomas,* 130 F.3d at 762 n. 8 (citing cases) (prisoners do not have a protected liberty interest in demotion to C-grade status or loss of commissary privileges).

This leaves the fact that for 24 non-consecutive days out of the 60-day confinement period, Plaintiff was in a cell with functioning heat but which was nonetheless cold because of a broken window, and he was not permitted extra clothing or a blanket like he would have if he had been a general-population inmate. While this increased exposure to cold was likely uncomfortable and may even implicate the Eighth Amendment (see below), it was not sufficiently harsh or atypical from ordinary prison life to give rise to constitutional due process concerns. "[E]ven extremely harsh prison conditions may not be so 'atypical' as to create the liberty interest the [Supreme] Court contemplated [in *Sandin*]." *Townsend,* 522 F.3d at 771; *see, e.g., Hopkins v. Klindworth*, 556 F. App'x 497, 499 (7th Cir. 2014) (allegations of cold air seeping through broken cell window stated an Eighth Amendment conditions-of-confinement claim, but a due process claim based on the same allegations was properly dismissed); *Coleman v. Baldwin*, No. 15 C 5596, 2016 WL 537970, at *4 (N.D. Ill. Feb. 11, 2016) (six-month segregation where Plaintiff was exposed to insects, mice, broken windows during winter, and deprivation of his wheelchair and walking cane did not implicate liberty interest); *Earl v. Racine Cnty. Jail,* 718 F.3d 689 (7th Cir.2013) (five days on suicide watch, where the plaintiff was constantly monitored, allowed limited possessions, dressed in a suicide-proof gown to which he suffered an allergic reaction and kept in continuous light for the first 24 hours, did not deprive plaintiff of a liberty interest).

For all of these reasons, Plaintiff's segregated confinement did not amount to a deprivation of liberty, and his due process claim is therefore doomed.

The Court also notes that Plaintiff could not ultimately succeed on an Eighth Amendment claim. Although the Court's initial review of Plaintiff's complaint under 28 U.S.C. § 1915A did not raise the possibility of an Eighth Amendment violation and nor did Plaintiff ever amend his complaint to raise such a claim, the Seventh Circuit has noted that the issue of cell conditions in segregation is sometimes "best analyzed as a claim brought under the Eighth Amendment". *Townsend,* 522 F.3d at 772. An Eighth Amendment claim of constitutionally inadequate confinement requires a two-step analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities"; and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend,* 522 F.3d at, 773 (internal quotation marks and citation omitted).

As to the first prong, confinement that deprives an inmate of "protection from extreme cold" may violate the Constitution. *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir. 1997). Thus, inmates are entitled "not to be confined in a cell at so low a temperature as to cause severe discomfort." *Raine v. Williford*, 32 F.3d 1024, 1034-35 (7th Cir. 1994). "Courts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Dixon,* 114 F.3d at 644. Here issues of disputed fact exist as to whether Plaintiff's cells in winter at the end of 2013 to early 2014 reached temperatures cold enough to support a constitutional claim and whether Plaintiff had adequate means to keep warm

12

despite the cold. Although the heat functioned in all six of Plaintiff's segregation cells, Defendants do not contest Plaintiff's contention that the windows in several of the cells were broken in some fashion. Nor are there affidavits, declarations, or other evidence from Defendants, Stateville engineers or maintenance persons about the heating system, temperatures, and conditions in these areas. Consequently, there is at least a disputed issue of material fact as to whether Plaintiff's cell temperatures were "so low . . . as to cause severe discomfort [.]" *Dixon*, 114 F.3d at 644 (quoting *Del Raine*, 32 F.3d at 1034).

But there could be no finding of deliberate indifference based on the evidence here. "Deliberate indifference" means that the prison official knew that the inmate faced a substantial risk of serious harm but disregarded that risk by failing to take reasonable measures to address it. *See Farmer,* 511 U.S. at 847; *Townsend,* 552 F.3d at 773. Deliberate indifference is comparable to criminal recklessness. *Farmer*, 511 U.S. at 837. Here Stateville officials moved Plaintiff promptly each of the various times during his segregated confinement that he complained about the temperature of his different cells. Plaintiff himself testified that he was constantly moved because of his complaints in an attempt to find him a cell that was warmer. Plaintiff could not establish deliberate indifference in light of this undisputed evidence that correctional officials took repeated corrective action attempting to rectify Plaintiff's situation. *See, e.g., Terrell v. Carter*, 13 C 1103, 2014 WL 6566072, at *8 (N.D. Ill. Nov. 20, 2014) (summary judgment granted where officer, in response to complaints about cold cell, contacted maintenance personnel); *Daniels v. Hickey*, No. 11 C 4151, 2012 WL 4759235, at *9 (N.D. Ill. Oct. 5, 2012) (same); *Hagemann,* 2011 WL 38996, at *3–5 (finding lack of deliberate indifference where defendants responded to plaintiff's complaints and monitored temperature of cell); *Roberts v.*

*Dep't of Correction,* No. 94 C 7002, 1996 WL 526779, at *3 (N.D. Ill. Sept. 12, 1996) (no deliberate indifference where defendants moved Plaintiff after 13 days in cell without water).

Furthermore, there is no evidence that Defendant (who is the Adjustment Committee Chairperson) was personally aware of Plaintiff's complaints about the temperature of his cell. Because § 1983 creates a cause of action based on personal liability and predicated on fault, a prisoner must establish that the defendant personally caused or participated in the alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). There is no evidence that Plaintiff ever informed Defendant about his cell conditions; instead Plaintiff testified that he complained to the gallery officer, F-house sergeant, and F-house lieutenant. Plaintiff attests that, on the day of his hearing, he informed Defendant only that he had already been in segregation for over 30 days. (P's Mem. at 8-10.) Thus, no reasonable jury could find that Defendant was personally involved in the alleged deprivations. *See Kuhn*, 678 F.3d at 556; *Pepper*, 430 F.3d at 810; *see also Moore v. Lemke*, No. 15 C 1596, 2016 WL 4530308, at *3 (N.D. Ill. Aug. 30, 2016) (granting summary judgment on prisoner's conditions-of-confinement claim where the evidence failed to create a "triable issue as to whether [defendant] was personally involved in any unconstitutional conditions of confinement [the prisoner] may have endured").

IV. **Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment [35] is granted. Plaintiff's federal claim is dismissed with prejudice. The Clerk is directed to enter final judgment for the defendant, without costs. Any pending motions are terminated as moot. Absent a basis for extension, if Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff seeks leave to

proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Dated: September 5, 2017

_____
John J. Tharp, Jr.
United States District Judge